UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Charity Sportsman, <br> as Trustee for the Heirs and <br> Next-of-Kin of Terry G. Sportsman, Jr., | Civil No. 17-1064 (DWF/KMM) |
| Plaintiff, | **MEMORANDUM** <br> **OPINION AND ORDER** |
| v. | |
| California Overland, Ltd., a Minnesota corporation, and David V. Juneau, | |
| Defendants. | |

Jessica K. Allen, Esq., and Steven J. Pfefferle, Esq., Pfefferle Kane LLP; Richard Francis Burke, Jr., Esq., Clifford Law Offices, P.C., counsel for Plaintiff.

Christopher P. Malone, Esq., and Rachel B. Beauchamp, Esq., Cousineau, Van Bergen, McNee & Malone, P.A., counsel for Defendants.

**INTRODUCTION**

This matter is before the Court on Defendants' Motion to Apply Wisconsin Law, (Doc. No. 18), and Plaintiff's Motion for the Application of Minnesota Law on the Choice-of-Law Issue, (Doc. No. 23). For the reasons set forth below, the Court concludes that Minnesota law governs Plaintiff's claims in this matter.

# BACKGROUND

**I.   General Background**

On June 14, 2015, a vehicle hauling a fishing boat driven by decedent Terry G. Sportsman, Jr. ("Decedent" or "Mr. Sportsman") collided with a semi-tractor tanker truck Defendant David V. Juneau ("Juneau") was driving within the course of his employment with Defendant California Overland, Ltd. ("California Overland").  (Doc. No. 20 ("Beauchamp Aff.") ¶ 1, Ex. 1 ("Accident Report"); Doc. No. 26 ("Burke Aff.") ¶ 3, Ex. L at 4; Beauchamp Aff. ¶ 4, Ex. 4 ("Meyer Dep.") at 25-27, 30, 32.)  The collision occurred on Interstate Highway 39 in the City of Janesville, Rock County, State of Wisconsin.  (*See* Accident Report.)

As Mr. Sportsman traveled south on Interstate Highway 39 towards his home in Illinois, Juneau traveled north, hauling an empty tank trailer he had picked up in Pennsylvania.  (*See id.*; Meyer Dep. at 32-33.)  At approximately 8:20 a.m., Juneau was in the right lane of northbound I-39; he then crossed the median into the southbound lanes of I-39, causing the accident.  (Accident Report at 1, 5.)  Mr. Sportsman died on the scene.  (*Id.* at 5.)

At the time of the accident, Juneau was a resident of South Dakota, and he worked as a driver of semi-tractor trailer trucks for California Overland.  (Meyer Dep. at 30-31.)  California Overland is a Minnesota corporation, incorporated under Minnesota law, with its headquarters located in Wabasha, Minnesota.  (*Id.* at 10, 16.)  In 2015, California Overland owned about 120 tractors and 240 trailers, all of which are licensed in Minnesota.  (*Id.* at 24-25.)  Additionally, in 2015, 57 out of the 142 employed truck

drivers resided in the State of Minnesota. (*Id.* at 37; Burke Aff. ¶ 3, Ex. C at 3.) In June 2015, California Overland had 486 regular customers, and out of those customers, 65 were located in Minnesota, and 43 were located in Wisconsin. (Meyer Dep. at 41; Burke Aff. ¶ 3, Ex. C at 4.) In 2015, California Overland delivered 19,557 orders, including 5,788 to Minnesota, and 2,363 to Wisconsin. (Meyer Dep. at 59-60.)

At the time of the accident, Decedent, his wife, Charity Sportsman ("Mrs. Sportsman"), and their two minor children were residents of Illinois. (*See* Accident Report; Burke Aff. ¶ 3, Ex. E.) Mr. Sportsman's parents owned a cabin in Wisconsin which was purchased from Decedent's grandfather. (Burke Aff. ¶ 3, Ex. L at 3.) Neither Mr. Sportsman nor Mrs. Sportsman ever owned this cabin or any property in Wisconsin or Minnesota since 2007. (*See id.* at 2-3.) Decedent occasionally fished in Wisconsin; on three different occasions, Mr. Sportsman won fishing tournaments in Wisconsin, earning approximately $1,000 total. He also fished in Minnesota. (*See id.* at 4, 7-9.) From 2007 until the time of his death, Mr. Sportsman obtained fishing and hunting licenses annually in Wisconsin, and he obtained a fishing license in Minnesota on approximately three occasions. (*See id.* at 4.) Both Mr. and Mrs. Sportsman had driver's licenses issued by the State of Illinois. (*Id.*)

## II.    Procedural Background

On August 5, 2016, Defendants filed a declaratory judgment action in Wisconsin state court, seeking a determination that Wisconsin law applied to any wrongful death claims arising out of Mr. Sportsman's death. (Burke Aff. ¶ 3, Ex. E.) On April 20, 2017,

the Wisconsin court dismissed Defendants' complaint on the basis that it lacked personal jurisdiction over the Sportsmans.  (*See* Burke Aff. ¶ 3, Exs. F-G.)

On September 16, 2016, Decedent's surviving spouse Charity Sportsman, filed a wrongful death suit on behalf of herself and their two minor children in their home state in the United States District Court - Northern District of Illinois.  (Burke Aff. ¶ 3, Ex. H.)  On March 23, 2017, the Illinois federal district court dismissed the case, concluding that it lacked personal jurisdiction over Defendants.  (Burke Aff. ¶ 3, Ex. J.)

On April 5, 2017, Mrs. Sportsman then filed a complaint in this court, alleging claims under Illinois law for her husband's wrongful death.  (Doc. No. 1.)  Defendants answered and asserted a counterclaim seeking a declaratory judgment that Wisconsin law should apply to Plaintiff's claims.  (*See* Doc. No. 5.)  After the parties entered into a stipulation precluding Mrs. Sportsman from alleging claims under Illinois law, Mrs. Sportsman served and filed an amended complaint as Trustee for the Next-of-Kin of Mr. Sportsman, alleging claims for wrongful death under Minnesota law.  (Doc. Nos. 13, 16.)  The parties disagree as to which State's law should govern in this case, particularly with respect to available damages; Plaintiff and Defendants have separately moved the Court to determine which state's law applies.  (Doc. Nos. 18, 23.)

## DISCUSSION

### I. Legal Standard

In cases where jurisdiction is based on diversity, federal courts apply the forum state's choice of law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Highwoods Props., Inc. v. Executive Risk Indem., Inc.*, 407 F.3d 917, 920 (8th

Cir. 2005). As this is a diversity case, the Court applies Minnesota's choice-of-law principles. However, before conducting a choice-of-law analysis, the court must determine if the relevant laws conflict. *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). "A conflict exists if the rule of one state or the other is outcome determinative." *Glover v. Merck & Co., Inc.*, 345 F. Supp. 2d 994, 997 (D. Minn. 2004). Under Minnesota law, the court must also determine whether it would be constitutional to apply each state's law. *Id*. at 997. In order to constitutionally apply a state's law, the state in question "must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 590 N.W.2d 670, 672 (Minn. Ct. App.1999), *aff'd*, 604 N.W.2d 91 (Minn. 2000) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)).

If the court determines that a conflict exists and that either state's law may be constitutionally applied, the court must determine whether the law in question is substantive or procedural. *See Glover*, 345 F. Supp. 2d at 998. If the conflicting laws are substantive, the court conducts "a multi-step choice-of law analysis, which includes application of five choice-influencing considerations, to determine which state's law applies." *Id.* (quotation marks and citation omitted); *see also Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 470 (Minn.1994). The five factors are: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Jepson*, 513 N.W.2d at 470. In considering these factors,

courts must evaluate each case on its own particular facts. *See id.* ("These factors were not intended to spawn the evolution of set mechanical rules but instead to prompt courts to carefully and critically consider each new fact situation and explain in a straight-forward manner their choice of law.").

### A.     Conflict Between Minnesota and Wisconsin Law

The parties agree that there is a conflict between the relevant Minnesota and Wisconsin laws. Specifically, Plaintiff emphasizes that Wisconsin caps damages for loss of society and companionship in wrongful death claims. Defendants similarly argue that the wrongful death statutes of the two states substantively conflict with respect to potential claimants, available claims, and measure of damages.

Minnesota's wrongful death statute, Minn. Stat. § 573.02, provides for recovery in the form of "the amount the jury deems fair and just in reference to the pecuniary loss resulting from the death, [which] shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered by the death." Minn. Stat. § 573.02, subd. 1. Thus, potential claimants include the decedent's spouse and next of kin, and the "pecuniary loss" available to such claimants is determined according to what the jury determines is fair. *See id.*

In contrast, Wisconsin's wrongful death statute, Wis. Stat. §§ 895.03, 895.04, provides a cause of action for a surviving "spouse or domestic partner . . . and minor children under 18 years of age" followed by the decedent's lineal heirs if no such spouse or children survives. Wis. Stat. § 895.04(2). The statute lists several classes of potential wrongful death beneficiaries and establishes a hierarchy to determine who may bring a

6

claim. *See id.* Such beneficiaries may obtain "damages for pecuniary injury," and "[a]dditional damages" of up to $350,000 for a deceased adult "for loss of society and companionship." Wis. Stat. § 895.04(4). If a jury awards damages exceeding the $350,000 cap, Wisconsin law directs the court to reduce such excess damages. *See* Wis. Stat. § 895.04(7).

The Court concludes that a conflict exists between the wrongful death statutes of Minnesota and Wisconsin. As outlined above, the statutes provide for different potential claimants, and only Wisconsin imposes a limit on companionship damages. These differences would be outcome-determinative in this action, providing for materially different relief. The Court must next ensure that each state has significant contacts so that its law can be constitutionally applied.

### B.     Constitutional Limits

"[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Nodak*, 590 N.W.2d at 672 (citation omitted). Relevant contacts under this inquiry include, for example, the parties' places of residence, registration of vehicles, and the parties' historical presence in the respective forums. *See Jepson*, 513 N.W.2d at 470.

Defendants argue that the cause of action must have a connection to the forum that is "not . . . too slight and casual" in order to constitutionally apply the forum's laws. (Doc. No. 21 at 17 (quoting *Hime v. State Farm Fire & Cas. Co.*, 284 N.W.2d 829, 832 (Minn. 1979)).) According to Defendants, Minnesota's only relevant connection is that it

7

is California Overland's home state. Defendants contend that "the relationship of this cause of action with the State of Minnesota cannot be described as anything other than slight and casual." (*Id.*) In contrast, Plaintiff argues that "[a]pplying Minnesota law to this case is neither unfair nor unexpected." (Doc. No. 25 at 19.)

The Court concludes that both states have significant contacts, making application of either state's law constitutional. In particular, the Court rejects Defendants' argument regarding the unconstitutionality of applying Minnesota law and agrees with Plaintiff that Mr. Sportsman's heirs should be permitted to seek damages against Defendants under the laws of California Overland's place of incorporation. There is nothing arbitrary or unfair about this result. *See Mooney v. Allianz Life Ins. Co. of N. Am.*, 244 F.R.D. 531, 535 (D. Minn. 2007) ("As a Minnesota corporation, Allianz can not [sic] claim surprise by the application of Minnesota law to conduct emanating from Minnesota.")

C. **Choice of Law**

Turning to the choice-of-law analysis, the Court concludes as a preliminary matter that the conflicting laws at issue are substantive, and not procedural, in nature.[1] Considering the relevant factors, the Court concludes that the maintenance of interstate order, simplification of the judicial task, and advancement of the forum's governmental interest warrant the application of Minnesota law.[2]

---

[1] The parties do not dispute that the conflict is on a substantive issue of law.

[2] Because the first four factors weigh in favor of applying Minnesota law, the Court need not make a determination as to which of the states has the better rule of law. *See Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 455 (Minn. Ct. App. 2001)

### 1. Predictability of Result

The first consideration, predictability of result, "represents the ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping." *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins.* Co., 604 N.W.2d 91, 94 (Minn. 2000). Where a court is considering a tort claim arising out of a motor vehicle collision, "[p]redictability of result . . . is not of great importance . . . because of the unplanned nature of automobile accidents." *See Jepson*, 513 N.W.2d at 470; *cf. Nodak*, 604 N.W.2d at 95 ("[A]utomobile accidents are not consensual transactions, nor is this a contract case, and therefore predictability favors neither forum."). Simply put, "[p]arties do not commit torts in one state rather than another because of that state's tort laws." *Kenna v. So-Fro Fabrics, Inc.*, 18 F.3d 623, 626 (8th Cir. 1994). The Court concludes that this factor carries little weight in this case.

### 2. Maintenance of Interstate Order

Next, the maintenance-of-interstate-order factor, is "primarily concerned with whether the application of Minnesota law would manifest disrespect for [another state's] sovereignty or impede the interstate movement of people and goods." *See Jepson*, 513 N.W.2d at 471. This factor aims "to maintain a coherent legal system in which the courts of different states strive to sustain, rather than subvert, each other's interests in areas where their own interests are less strong." *Id.* Through this factor, courts can ensure that "the opportunities for forum shopping [are] kept within reasonable bounds." *Id.* Courts

---

("[T]he fifth factor . . . should be applied only when the choice-of-law question remains unresolved after the other factors are considered.").

should defer to another state's law "when that sister state has a substantial concern with the problem, even when the forum state also has an identifiable interest." *Nodak*, 590 N.W.2d at 673.

To evaluate this factor, the court must carefully consider the relevant contacts between each state and the transaction at issue. *Id.* at 674. "[M]aintenance of interstate order [in tort cases] is generally satisfied as long as the state whose laws are purportedly in conflict has sufficient contacts with and interest in the facts and issues being litigated." *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 739 (8th Cir. 1995) (citation omitted). Where the state's only relevant "contact" with the litigation is the location of a corporate defendant's principal place of business, this fact alone should not carry significant weight. *See Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 621 (8th Cir. 2001). In addition, states carry a "'singular concern' . . . for motor vehicle accidents occurring within [their] borders." *Nodak*, 590 N.W.2d at 674 (citation omitted). However, the mere fortuity of an accident's location is not necessarily dispositive in a choice-of-law inquiry. *Cf. Kenna*, 18 F.3d at 627-28.

Defendant argues that the maintenance of interstate order strongly favors Wisconsin based on "the most significant grouping of contacts" in that state. (Doc. No. 21 at 20.) Defendant also argues that states have a legitimate concern for motor-vehicle accidents within their borders and have only a minimal interest in protecting non-residents from torts committed by residents. Defendants emphasize that the accident took place in Wisconsin, Wisconsin first-responders attended to the scene, and neither driver was a Minnesota resident. Further, Defendant urges that the decedent and the

next-of-kin claimants have significant relationships to Wisconsin, such as Sportsman's fishing tournament income, family cabin, recreational vehicles, and hunting and fishing licenses. In Defendant's view, "Sportsman, Jr. and his entire family have significant and ongoing contacts with Wisconsin." (*Id.* at 23.) Defendants also note that Juneau spent the night before the accident in Wisconsin, and he is a South Dakota resident. Although California Overland is a Minnesota business, Defendants suggest, it "has and had a significant, ongoing, and continuous presence in Wisconsin." (*Id.* at 24.)

Plaintiff argues that this factor favors Minnesota law. Plaintiff points out that the Minnesota Supreme Court has noted that "[p]eople who purposefully seek advantages offered by another state ought not to be allowed to avoid the burdens associated with their choice." (Doc. No. 25 at 21 (quoting *Jepson*, 513 N.W.2d at 471).) In this regard, Plaintiff contends that California Overland enjoys the benefits of operating in Minnesota, and Juneau has enjoyed the benefits of being employed by a Minnesota company. Further, Plaintiff suggests that California Overland did not direct any specific business to Wisconsin in connection with the accident. Finally, Plaintiffs argue that Defendants are forum shopping by attempting to impose Wisconsin's damages cap.

The Court agrees with Plaintiff that this factor favors the application of Minnesota law. Specifically, the Court concludes that California Overland's substantial business operations in Minnesota are the more relevant contacts under this factor. Importantly, the Court does not reach this conclusion based simply on the location of California Overland's corporate domicile. Rather, the Court determines that relevant conduct by California Overland that most likely occurred within this state is central to Plaintiff's

11

case. Defendant Juneau, an employee of California Overland, regularly drove on Minnesota roads in a vehicle licensed and inspected in Minnesota. Along with a negligence claim against Juneau premised on the accident itself, Plaintiff also asserts claims directed at California's Overland corporate conduct, including negligence in connection with its training, instruction, monitoring, and supervision of Juneau; negligent hiring; negligent retention; and negligent supervision. A Minnesota company authorized to do business in this state whose employee was involved in a serious accident should not be surprised by the application of Minnesota law to such claims.

In contrast, Wisconsin has no relevant contacts in this action by an Illinois resident aside from the location where the accident took place. To be sure, the accident's location is not irrelevant to the Court's analysis. Wisconsin has a valid interest in accidents that occur on its highways, and Wisconsin's wrongful death statute specifically governs "death[s] caused in [the] state." *See* Wis. Stat. § 895.03. The Court concludes, however, that these state interests arising from the happenstance of the accident's location do not override Minnesota's relevant contacts with the parties' dispute.

In addition, although both parties could reasonably be accused of some degree of forum-shopping in this matter, Plaintiff's choice to originally litigate this action in her own home state and thereafter in California Overland's place of incorporation does not reflect significant forum shopping. In contrast, the procedural history of this case and the parties' other litigation in Wisconsin and Illinois illustrate Defendants' vigorous efforts to impose Wisconsin law in this case. In sum, the Court concludes that this factor weighs in favor of applying Minnesota law.

### 3. Simplification of the Judicial Task

The third factor is not particularly relevant where the competing laws are straightforward. *See Nodak*, 604 N.W.2d at 95. This court is capable of applying either Minnesota or Wisconsin law without difficulty. Even so, "the judicial task is obviously simplified when a Minnesota court applies Minnesota law." *Jacobson v. Universal Underwriters Ins. Grp.*, 645 N.W.2d 741, 746 (Minn. Ct. App. 2002) (citation omitted). This factor therefore weighs slightly in favor of applying Minnesota law.

### 4. Advancement of the Forum's Governmental Interest

The fourth factor addresses "which choice of law most advances a significant interest of the forum." *See id.* (citation omitted). "A governmental interest is discerned by comparing the reasons supporting the legal rules of the forum and the other state and the factual contacts with the case, or the issue in a case." *Nodak*, 590 N.W.2d at 674. Critically, courts in Minnesota should not be obligated "to apply rules of law inconsistent with Minnesota's concept of fairness and equity." *See Jacobson*, 645 N.W.2d at 746 (citation omitted). "In considering which law will advance the governmental interest of Minnesota, [the court should consider] the public policy of both forums." *See Schumacher v. Schumacher*, 676 N.W.2d 685, 691 (Minn. Ct. App. 2004). In general, however, "Minnesota's governmental interests will most clearly be advanced by application of Minnesota law." *See Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 455 (Minn. Ct. App. 2001) (citation omitted).

As noted by the Minnesota Court of Appeals in an insurance dispute following a wrongful death settlement arising out of an automobile accident, "Minnesota courts have

13

a recognized interest in seeing that all tort victims are fully compensated," and "[t]his interest is not limited to residents." *Jacobson*, 645 N.W.2d at 743, 745-46 (declining to apply Iowa's wrongful death law which did not provide for pecuniary loss damages); *see also Boatwright v. Budak*, 625 N.W.2d 483, 489 (Minn. Ct. App. 2001) ("Minnesota places great value in compensating tort victims." (quoting *Jepson*, 513 N.W.2d at 472)). However, "Minnesota's interest in compensating tort victims is lessened where the injury occurred in another state, the injured party is not a Minnesota resident and did not receive medical care here." *Schmelzle v. ALZA Corp.*, 561 F. Supp. 2d 1046, 1050 (D. Minn. 2008). Similar to Minnesota, "Wisconsin has an interest in compensating those injured by negligent conduct within its borders, whether the tort victims are residents or nonresidents." *Brooks v. Gen. Cas. Co. of Wis.*, Civ. No. 06-C-0996, 2007 WL 4305577, at *5 (E.D. Wis. Dec. 7, 2007). As its wrongful death statute demonstrates, however, Wisconsin also has an interest in "protect[ing] . . . those doing business in the state from the risk of large awards for certain nonpecuniary losses in death cases." *See id.* In a wrongful death action, the home state of the decedent and beneficiaries "has the predominate governmental interest in distribution of the recovery." *See Montpetit v. Allina Health Sys., Inc.*, Civ. No. C2-00-571, 2000 WL 1486581, at *3-4 (Minn. Ct. App. Oct. 10, 2000).

The Court concludes that applying Wisconsin law would unfairly prevent Sportsman's family and next-of-kin from being fully compensated consistent with the laws of California Overland's home state. Because neither the decedent nor his heirs are domiciled in Minnesota or Wisconsin, the governmental interest in the distribution of a

wrongful death recovery favors neither state.  However, Minnesota's interest in fully compensating tort victims would be undermined by the application of Wisconsin law.  Specifically, Wisconsin law would impose limits on which of the decedent's family members may recover as well as the ultimate amount of any possible recovery.  The location of the accident is not particularly relevant here, and no parties have meaningful Wisconsin contacts.[3]  Notably, a Wisconsin court has already determined that Wisconsin lacked sufficient contact with the Sportsmans to exercise personal jurisdiction in Defendants' prior declaratory judgment action.  Notwithstanding Wisconsin's apparent interest in protecting corporations from large damages in wrongful death cases, Minnesota's strong governmental interest in fully compensating tort victims weighs in favor of applying Minnesota law.

In conclusion, Court determines that the state of Minnesota has enough contacts with the cause of action to constitutionally apply Minnesota law, and the five-factor test favors the application of Minnesota law.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Apply Wisconsin Law (Doc. No. [18]) is **DENIED**.

2. Plaintiff's Motion for the Application of Minnesota Law on the Choice-of-Law Issue (Doc. No. [23]) is **GRANTED**.

---

[3] Although Defendants place much emphasis on Mr. Sportsman and his family's recreational contacts with the state of Wisconsin, the Court declines to place much weight on these contacts or Mr. Sportsman's earnings from fishing tournaments in Wisconsin.

      3.      The Court holds that Minnesota law governs this case.

Dated:  April 18, 2018                        <u>s/Donovan W. Frank</u>
                                                      DONOVAN W. FRANK
                                                      United States District Judge